1    WO

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                         **FOR THE DISTRICT OF ARIZONA**

8

9    Ernesto Salgado Martinez,                    No. CV-05-01561-PHX-ROS

10                        Petitioner,              <u>DEATH PENALTY CASE</u>

11   v.                                           **ORDER**

12   Charles L. Ryan, et al.,

13                        Respondents.

On March 23, 2021, the Court denied Martinez's motion for relief from judgment pursuant to Rule 60(b)(6). (Docs. 136, 141 at 5.) Martinez has filed a motion for reconsideration. (Doc. 142.) The motion is fully briefed. (Docs. 145, 146.) The Court will deny the motion for reconsideration.

**I.    Discussion**

A motion for reconsideration will be denied absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to the Court's attention earlier with reasonable diligence. LRCiv 7.2(g)(1); *see United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009). The motion may not repeat previously made arguments. *See id.*; *Motorola, Inc. v. J.B. Rodgers Mech. Contractors*, 215 F.R.D. 581, 582 (D. Ariz. 2003) (reconsideration cannot "be used to ask the Court to rethink what it has already thought" through).

Martinez's Rule 60(b) motion was premised on the grounds that the Ninth Circuit's decision in *Mitchell v. United States*, 958 F.3d 775 (9th Cir. 2020), entitled him to discovery

regarding a potential *Napue*[1] claim. (Doc. 141.) Martinez now asserts that the Court "overlooked or misapprehended" several points in denying his request for discovery and a certificate of appealability. The Court disagrees.

In denying Martinez's Rule 60(b) motion, the Court found it had jurisdiction to resolve the motion because he sought only the opportunity to develop the potential *Napue* claim, and, unlike his previous attempts to reopen the judgment, did not separately assert the *Napue* claim itself. (*See id.* at 3.) For purposes of the analysis, the Court assumed without deciding that *Mitchell* was an "extraordinary change in the law." (Doc. 141 at 4.) The Court then denied the requested discovery, finding there was no significant likelihood Martinez would be entitled to relief because, "given the constraints imposed by AEDPA," it would be difficult to determine a vehicle for vindicating the right violated. (*Id.*) Assuming he could find a legitimate "vehicle" to present his claim using the new evidence, the Court found no meaningful likelihood his convictions or sentence would be upset. (*Id.*)

The Court did not, as Martinez asserts, "graft[] onto *Mitchell* a requirement that Martinez identify the legal vehicle that would allow Martinez habeas relief if he obtained the *Napue* evidence he seeks." (Doc. 142 at 2.) The Court's suggestion that Martinez would have difficulty identifying the vehicle is not a "disapprobation of the rule announced in *Mitchell*," (*see id.*), rather, it is merely the application of the law controlling discovery in § 2254 habeas. Whether a petitioner has established "good cause" for discovery under Rule 6(a) requires a habeas court to determine the essential elements of the underlying substantive claim and evaluate whether "specific allegations *before the court* show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)) (emphasis added).

A habeas petitioner is not entitled to discovery "as a matter of ordinary course." *Bracy*, 520 U.S. at 904. "[A] district court abuse[s] its discretion in not ordering Rule 6(a) discovery when discovery [i]s 'essential' for the habeas petitioner to 'develop fully' his

---

[1] *Napue v. Illinois*, 360 U.S. 264 (1959).

underlying claim." *Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005) (quoting *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997)). The Ninth Circuit has explained that in habeas proceedings "discovery is available only in the discretion of the court and for good cause shown," *Rich v. Calderon*, 187 F.3d 1064, 1068 (9th Cir. 1999) (citing Rules Governing Section 2254 Cases, Rule 6(a) 28 U.S.C. foll. § 2254), and is not "meant to be a fishing expedition for habeas petitioners to 'explore their case in search of its existence.'" *Id.* at 1067 (quoting *Calderon v U.S.D.C. (Nicolas)*, 98 F.3d 1102, 1106 (9th Cir. 1996)).

Thus, in determining whether discovery should be permitted, the Court properly focused on whether specific allegations before the court demonstrated a significant likelihood of relief. (*See* Doc. 141 at 4.) The Court suggested Martinez's ability to ever present a claim on which it would permit discovery would be a difficult task because of the procedural hurdles AEDPA imposes and because, even if Martinez could prove the allegations set forth in his Rule 60(b) motions, there was no significant likelihood he would obtain relief. (Doc. 141 at 4.)

Assuming, as this Court did, that *Mitchell* was a change in the law, it is not one that permits the Court to ignore the constraints of AEDPA, which contains provisions such as 28 U.S.C. § 2244(b)(3)(A), that prohibits the filing of second or successive petitions absent authorization from the court of appeals, and §§ 2254(d)(1) and (e)(2) that "strongly discourage[s]" state prisoners from submitting new evidence. *Cullen v. Pinholster*, 563 U.S. 170, 186 (2011). "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams v. Taylor*, 529 U.S. 420, 437 (2000).

Put another way, the Court cannot find good cause to grant discovery where Martinez has no procedurally proper mechanism for demonstrating entitlement to relief. As Martinez notes, the Ninth Circuit in *Mitchell* "ruled that *Peña-Rodriguez* did not set aside the bar on juror interviews in the absence of good cause. *Mitchell*, 958 F.3d at 790-91." (Doc. 146 at 2.) Similarly, *Mitchell* did not set aside the bar on discovery in state habeas cases in the absence of good cause. Good cause cannot be shown if Martinez, after

fully developing the evidence, would still be unable to demonstrate that he is entitled to relief. *See Bracy*, 520 U.S. at 908–09. The Court suggested it would be difficult procedurally to do so, but moreover found that, assuming Martinez uncovered the evidence he hoped to uncover, there was no significant likelihood that such a claim would be successful.

Martinez contends that in doing so, the Court misapprehended the materiality standard of *Napue*, and should reconsider its conclusion that "assuming Martinez found a legitimate 'vehicle' to present claims using the new evidence, there is no meaningful likelihood his convictions or sentences would be upset" and, in its discretion, denied discovery on these grounds. (Doc. 141 at 4)

Assuming, arguendo, that Martinez uncovered evidence supporting his *Napue* claim, reversal would not be "virtually automatic," as he claims. (Doc. 136 at 16) (citing *Jackson v. Brown*, 513 F.3d 1057, 1076 (9th Cir. 2008), and *Hayes v. Brown*, 399 F.3d 972, 978 (9th Cir. 2005) (en banc); *see also* (Doc. 142 at 3.). Though both *Jackson* and *Hayes* cited this language from the Second Circuit with approval, both cases clarified that *Napue* did not create a "per se rule of reversal." *Jackson*, 513 F.3d at 1076; *Hayes*, 399 F.3d at 984. If error is established, the proper test under *Napue* is materiality; the Court must determine whether there is any reasonable likelihood that the false testimony could have affected the judgment of the jury; if so, then the conviction must be set aside. *Hayes*, 399 F.3d at 984 (quoting *Belmontes v. Woodford*, 350 F.3d 861, 881 (9th Cir. 2003)).

Martinez has failed to demonstrate how the *Napue* violation, if true, could have affected the judgment of the jury. Martinez asserts Sheriff Detective Douglas Beatty testified at the guilt phase of trial that the ignition was missing from a 1975 Monte Carlo driven by Martinez at the time of his arrest, which led prosecutors to argue Martinez had stolen the car and, therefore, had motive to shoot the victim, a state police patrolman, during a traffic stop and premeditated the homicide. (Doc. 142 at 2.) But there was ample evidence, aside from Detective Beatty's testimony about the missing ignition switch, that the Monte Carlo was stolen and that the murder was premeditated. The Court previously

summarized the evidence offered during the guilt phase of Martinez's trial relevant to the determination that the Monte Carlo was stolen and that Officer Martin's murder was premeditated, and will not restate that testimony here. (Doc. 127 at 12–16.)

Martinez argued in his Rule 60(b) motion that:

> Prosecutors *argued repeatedly in closing that the evidence showed that Martinez stole the vehicle* and therefore had motive to shoot Arizona DPS Officer Robert Martin at a traffic stop, which contributed significantly to the element of premeditation necessary to be proved beyond a reasonable doubt to convict of first degree murder. *See* ECF No. 115-5, Appx. 2 at 8-9, 12, 19-20, 28-29.

(Doc. 136 at 7) (emphasis added). He also asserted that the Respondents' arguments regarding premeditation are "disingenuous" and ignore "the critical significance prosecutors placed on that testimony in closing argument to prove beyond a reasonable doubt that Martinez acted with premeditation." (Doc. 139 at 4.)

Martinez's characterization of the significance placed on Det. Beatty's testimony is misleading. The Court has reviewed the closing arguments and the prosecutor did not assert that Martinez stole the Monte Carlo, only that the Monte Carlo he was driving was stolen, an uncontroverted fact whether the ignition switch was missing or not. The prosecution highlighted this and additional facts not contested in these proceedings to establish motive: "A stolen car, a handgun, a warrant for his arrest, on the run, and a prior felony conviction." (Doc. 115-5, Appx. 2 at 12; *see also id.* at 29 ("Motive. He's got a warrant for his arrest. He was on the run, a prior felony conviction, a stolen car. He was illegally in possession of a handgun, and he stated, 'If I am stopped by the police, I am not going back to jail.'.") Even if the fact that the car was stolen was removed from the equation, along with Martinez's statement that he intended not to go back to jail if stopped by police,[2] the fact remains that Martinez had a warrant for his arrest and was illegally in possession of a

---

[2] For purposes of the materiality analysis, the Court assumes Martinez could prove that the ignition switch was intact at the time of his arrest, that Maricopa County prosecutors were told by Detective Beatty or California criminalist Ricci Cooksey that the ignition in the Monte Carlo driven by Martinez was intact when it was impounded after his arrest, and that Fryer's testimony regarding Martinez's statements about what he would do if stopped by police were successfully impeached.

handgun. Moreover, Martinez admits the state's theory of premeditation also relied on the testimony of Maricopa County Chief Medical Examiner, Phillip Keen, M.D., as to the sequence of shots allegedly fired by Martinez that struck Officer Martin. (*See* Doc. 115 at 39). In addition, to prove premeditation the state also relied heavily in closing arguments on the amount of time it would have taken Officer Martin to walk the distance from his vehicle to the stolen Monte Carlo, where he was shot at the driver's side door.

> From 45 feet away, Bob Martin got out of his car and started walking toward the defendant's car. His body was found 37 feet in front of -- the front of his police car, and the location where he would have gotten out of that car is an additional 8 feet. 45 feet. 45 feet. How many steps is that for the defendant to keep thinking what is it? What is it that I am going to do when he gets to my car? However long it takes for Bob Martin to walk up to that car, that's how long the defendant is reflecting on what he's going to do when he gets there.
>
> . . .
>
> Four times he pulled this trigger, and four times he struck Bob Martin each time in the location designed to murder this police officer. In the neck, in the hand area, and then as the police officer spun, as he gets to the back of his car and perhaps to safety he shot him in the back. And then when he was down -- and we have scuff marks on both of Bob Martin's knees -- when he was down he pulled that trigger again. That's four, four times he shot this man. Premeditation each time he pulls that trigger he's thinking what I am doing to this man in the uniform? I am trying to kill him so I can get out of here. Four times. And then after he was dead or shortly before he died, he shot at him twice more and missed. Six times.

(Doc. 115-5, App. 2 at 17-19, *see also id.*, App. 3 at 73-74).

Further, Martinez has repeatedly, explicitly and incorrectly stated throughout these proceedings that "it is clear from closing argument that the prosecution sought to prove 'premeditation' through . . . the testimony of Det. Beatty *concerning the condition of the ignition* of the 1975 Chevrolet Monte Carlo at the time of [Martinez's] arrest." (Doc. 115 at 39) (citing Doc. 115-5, App. 2 at 8, 12, 19–20, 28–29) (emphasis added).[3] In fact, the

---

[3] Additional misstatements attributed to the prosecutor's closing arguments include:

"The prosecution argued in closing *argument that the absence of an ignition meant*

missing ignition was not mentioned at all during closing argument. It was mentioned only briefly in rebuttal closing argument in the context of one of several reasons why an eyewitness in Payson was able to remember and identify Martinez from a brief encounter at a gas station:

> . . . [I]t is significant because of the vehicle that was being driven, she told you that the person left the car running. And that is something because if you are driving a stolen vehicle you don't have any keys that work it, and you have to possibly use a screwdriver. And when you go to the gas station and somebody is looking right at you and, remember, she says there is an eye contact here, you don't want that person seeing you stick a screwdriver there in the ignition switch, do you, because right away they are going to know that something is up.

(*Id.*, Appx. 3 at 66.)

Thus, even if Martinez establishes the alleged *Napue* violation, there is no reasonable likelihood that the false testimony could have affected the judgment of the jury because the evidence supporting premeditation was overwhelming and uncontroverted. *See Hayes*, 399 F.3d at 984. Martinez has stated in these proceedings that the "Supreme Court has indicated that closing argument is the barometer for the significance the prosecution attaches to its evidence." (Doc. 115 at 39) (citing *Kyles v. Whitley*, 514 U.S. 419, 444 (1995) (for materiality purposes, "[t]he likely damage [to the prosecution's case had it complied with its duty under *Brady*] is best understood by taking the word of the prosecutor" in closing argument). If this is true, the prosecution placed no significance on

---

*that Petitioner knew the vehicle to be stolen* and, therefore, that he had a motive to kill Officer Martin, to wit, a desire not to be returned to prison for stealing the Monte Carlo. R.T., September 25, 1997, at 8, 12, 16, 19-20." (Doc. 95 at 6) (emphasis added).

"Prosecutors argued repeatedly in closing that *the evidence showed that Martinez stole the vehicle*." (Doc. 136 at 7) (emphasis added).

"Sheriff's Detective Douglas Beatty testified at the guilt phase of trial that the ignition was missing from a 1975 Monte Carlo driven by Martinez at the time of his arrest, which led prosecutors to argue *Martinez had stolen the car*." (Doc. 142 at 2) (emphasis added).

1    the testimony of Det. Beatty regarding the missing ignition switch.

2         Finally, as the Court previously stated, whatever change in law *Mitchell* may have

3    wrought does not support Martinez's request in these circumstances to permit evidentiary

4    development with respect to the *Napue* claim. (Doc. 141 at 4); *see Phelps v. Alameida*, 569

5    F.3d 1120, 1133 (9th Cir. 2009) ("[T]he proper course when analyzing a Rule 60(b)(6)

6    motion predicated on an intervening change in the law is to evaluate the circumstances

7    surrounding the specific motion before the court.").

8         The court in *Mitchell* addressed a jurisdictional issue; it rejected the Government's

9    argument that the Fifth Circuit's decision in *In re Robinson*, 917 F.3d 856, 861–66 (5th

10   Cir. 2019), was controlling in the circumstances present in *Mitchell*, and reaffirmed that

11   "[a]s explained in *Gonzalez*, an argument is a 'claim' if it 'substantively addresses federal

12   grounds' for setting aside a prisoner's conviction." *Mitchell*, 958 F.3d at 784. Finding that

13   the district court indeed had jurisdiction to decide the Rule 60(b) motion, the Ninth Circuit

14   proceeded to analyze the motion under the strictures of *Gonzalez*.

15        Similarly, Martinez argued, and this Court agreed, that under *Gonzalez* and the

16   Ninth Circuit's holding in *Mitchell*, the Court has jurisdiction over Martinez's Rule 60(b)

17   motion because it is not a disguised second or successive petition.

18        After addressing the jurisdictional issue, the Court in *Mitchell* turned to Mitchell's

19   argument that a recently-decided Supreme Court case, *Peña-Rodriguez v. Colorado*, 137

20   S. Ct. 855 (2017), was an extraordinary change in the law which would "give Mitchell

21   relief from the prior order denying his request to interview jurors." *Mitchell*, 958 F.3d at

22   787.

23        Like Mitchell, Martinez has failed to demonstrate how a change in case law would

24   upset or overturn a settled legal principle relied on by this court in denying his previous

25   requests for discovery. Previously, the Court analyzed Martinez's renewed request for an

26   "indication" whether it would consider a Rule 60(b) motion (Doc. 115) and found that he

27   failed to demonstrate a defect in the integrity of the underlying habeas proceedings, but

28   instead sought to raise new substantive claims under *Brady* and *Napue*. (Doc. 127 at 24–

25.) In doing so, this Court applied the then-controlling law regarding Rule 60(b)(6) motions, *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005), and denied the motion, and consequently the related discovery request, as a disguised second or successive petition. The Ninth Circuit's holding in *Mitchell* did not change that law.

Martinez's arguments are premised on flawed understandings of both the holding in *Mitchell* and the purpose of a Rule 60(b) motion. First, Martinez incorrectly states that the Court in *Mitchell* "explicitly understood the import of *Gonzalez* to be . . . [that] a petitioner may seek discovery via Rule 60(b) so long as he is not raising a merits-based substantive claim in his Rule 60(b) motion." (Doc. 146 at 3.) *Mitchell* neither explicitly nor implicitly said this; a Rule 60(b) motion is not a discovery device, much less a post-judgment one. Martinez's assertion also ignores the fact, as this Court pointed out, that the Court in Mitchell ultimately denied Mitchell's request for discovery because *Peña-Rodriguez* did not unsettle that court's previous order denying Mitchell's request to interview jurors. *Mitchell*, 958 F.3d at 790 ("[T]his change in law left untouched the law governing investigating and interviewing jurors.").

Martinez fails to point to a controlling or well-settled principle of law, relied on by the Court in denying either habeas relief or relief on the motions for indication, that is now unsettled as a result of the holding in *Mitchell*. Martinez has consistently argued that he is entitled to relief on the grounds of the Beatty *Brady* and *Napue* violations and has sought to support his claims with newly discovered evidence, and the Court has denied those requests, and the attendant discovery requests, as disguised second or successive petitions.

Beginning with his Motion to Remand before the Ninth Circuit, Martinez argued for a stay of his appeal and a remand "for consideration of newly-discovered evidence that supports claims that Maricopa County prosecutors violated . . . *Napue* . . . where they deliberately elicited critical testimony from Detective Beatty they knew or should have known was false." *Martinez v. Ryan*, No. 08-99009, (Dkt. 67 at 1) Martinez asserted he was entitled to habeas relief under *Brady*, *Kyles* and *Napue*. (*Id.*, Dkt. 67 at 12–16.) He requested a remand for evidentiary development and for preparation of findings of fact and

conclusions of law with respect to both the *Brady* and *Napue* claims. (*Id.* at 20.) In his reply brief, Martinez clarified that his *Quezada* motion "alleges a violation of *Napue*, . . . which identifies a due process violation where the prosecution fails to correct trial testimony it knows or should know is false." (*Id.*, Dkt. 86 at 3.) Martinez asserted he had established colorable *Brady* and *Napue* claims that should be remanded for discovery and evidentiary hearings. (*Id.* at 5.) Subsequently, the discovery of the photograph showing the apparently intact ignition prompted Martinez to file a motion for leave to supplement the motion to stay and remand stating "[t]he presence of the photo in the Maricopa County Attorney's file conclusively proves the *Napue* claim in the *Quezada* Motion because it is 'material,' as defined by the Supreme Court and this Court, and it establishes that prosecutors knew or should have known Beatty's testimony was false or misleading." (*Id.*, Dkt. 87 at 3.)

After the court granted Martinez's motion to remand for consideration of a possible *Brady-Napue* claim in light of the newly discovered evidence, Martinez asserted in the renewed request that "[t]he *Napue* violation would require that the writ issue." (Doc. 115 at 44.) He alleged that if in fact the ignition was intact, then he had stated a claim which, upon full factual development, might entitle him to habeas corpus relief. (*Id.* at 115 at 45.) Further, Martinez asserted that he was entitled to evidentiary development because he had "alleged *claims* which, if proven true, would establish the violation of the right to federal due process but, despite his diligence, he ha[d] not been able to assemble all of the evidence in support of the claims due to lack of cooperation of Arizona and California law enforcement in his investigation." (*Id.* at 45–46) (emphasis added).

*Mitchell* did not change the law governing the presentation of newly discovered evidence and new claims in Rule 60(b) motions and does not upset or overturn any legal principle relied on by the Court in previously denying Martinez's Rule 60(b) motions to reopen the judgment as disguised second or successive petitions.

Finally, as this Court previously ruled, in determining whether Martinez's claims of evidence of an intact ignition or false assertions by Detective Beatty would entitle Martinez to relief:

1  Even if Petitioner could demonstrate the assertions were false and part of
2  such a scheme, he cannot demonstrate a defect in the integrity of the
   proceedings because the assertions had no effect on the outcome of the
3  proceedings. The Court found Claim 4 procedurally barred and denied
4  further evidentiary development of Petitioner's theory that the ignition was
   intact at the time the vehicle was impounded. The Court considered the
5  evidence proffered in support of Claims 9, 16, and 17, and assumed that
6  Petitioner's new evidence would demonstrate that "the ignition was intact at
   the time Petitioner was arrested," but nonetheless concluded that Petitioner
7  failed to establish that no reasonable juror would have found him guilty of
8  premeditated first degree murder because "*whether the ignition was intact at
   the time Petitioner was arrested does not negate the fact that the owner had
9  reported it stolen.*" (Doc. 88 at 26-27) (emphasis added).

10       Thus, Martinez has failed to demonstrate that *Mitchell* is an intervening change in

11  law that constitutes extraordinary circumstances sufficient to permit him to reopen the

12  judgment in these circumstances. *See Phelps*, 569 F.3d at 1133.

13       Accordingly,

14       **IT IS ORDERED** Martinez's motion for reconsideration (Doc. 142) is DENIED.

15       Dated this 13th day of May, 2021.

16

17

18                                         _____
                                           Honorable Roslyn O. Silver
19                                         Senior United States District Judge

20

21

22

23

24

25

26

27

28

- 11 -